CANTON BRIDGE CO. *v.* CITY OF EATON RAPIDS.

CONTRACTS—SETTLEMENT—FRAUD—RESCISSION.
> Plaintiff, a bridge manufacturing company, appointed a certain person as its agent to take orders for bridges, under a contract which gave to the agent an interest in the profits of each separate contract secured by him. Upon a settlement between the company and its agent, it directed the defendant to pay to the agent the price of a bridge erected by it, and the agent, in consideration thereof, gave to the plaintiff certain orders for money due on other contracts. Four days later plaintiff attempted to rescind the settlement on the ground of fraud, and notified defendant to that effect, and thereafter brought suit to, recover the contract price for the bridge, which had been paid to the agent. It appeared upon the trial that the orders turned over to plaintiff under the settlement were not returned to the agent, and it was therefore *held* that plaintiff was not in a position to claim a rescission.

Error to Eaton; Smith, J. Submitted April 8, 1897. Decided June 7, 1897.

*Assumpsit* by the Canton Bridge Company against the city of Eaton Rapids to recover the contract price for the construction of a bridge. From a judgment for defendant, plaintiff brings error. Affirmed.

*John M. Corbin*, for appellant.

*C. O. Markham*, City Attorney, and *Huggett & Smith* (*H. F. Pennington*, of counsel), for appellee.

LONG, C. J. The plaintiff is a manufacturing corporation, organized under the laws of the State of Ohio. Prior to and at the date of December 22, 1892, the plaintiff had been engaged in the business of manufacturing and selling iron bridges. For some time prior to December 22, 1892, R. D. Wheaton had been associated with one J. C. Darst, of Chicago, Ill., under the name of R.

D. Wheaton & Co., their business being that of contract-
ing for iron bridges and iron work of that nature, and
having some manufacturing firm, like the plaintiff, make
the iron work on the specifications and drawings made by
R. D. Wheaton & Co.   On the 22d day of December, 1892,
a contract was made between the plaintiff and R. D.
Wheaton.   This contract is set out in the former opinion,
written by Mr. Justice MONTGOMERY.   107 Mich. 619.
In pursuance of the provisions of this contract, the plain-
tiff purchased the one-half interest of J. C. Darst in the
erection tools, office fixtures, etc., then in use by the firm
of R. D. Wheaton & Co.; the contract not making it
compulsory upon the plaintiff to purchase said interest
unless it could be purchased at a reasonable price.   In
pursuance of this contract, various contracts were taken
in the States of Michigan, Indiana, Illinois, and Wiscon-
sin, among them being the contract for the bridge for the
defendant, and under which it was built.   February 14,
1894, the plaintiff having completed the bridge, the com-
mon council of the city of Eaton Rapids accepted it, with
a recommendation by resolution that, owing to a disagree-
ment between R. D. Wheaton & Co. and the Canton
Bridge Company as to which was entitled to pay there-
for, payment should be deferred until such time as the
common council should learn to whom the same should be
legally paid.   This action was brought and was at issue
June 6, 1894.   The declaration and the bill of particulars
allege that the plaintiff is the real principal, and that R.
D. Wheaton was its agent in making this contract.   The
plea and notice deny this, and claim that R. D. Wheaton
and the plaintiff were copartners, doing business under
the firm name of R. D. Wheaton & Co.

On the former trial the court took the case away from
the jury, holding that the plaintiff and R. D. Wheaton
were copartners, and that the action should have been
brought in the name of the copartnership.   Upon appeal
to this court, it was held that the plaintiff was the principal, and that R. D. Wheaton was the agent; that the

contract and arrangement between the parties did not amount to a copartnership. On the new trial in the circuit court, the main controversy arose over the issue presented by the fourth clause in defendant's amended plea and notice: "That upon the 25th day of January, 1894, for a valuable consideration, the said plaintiff executed to R. D. Wheaton & Co. an order in writing, commanding the defendant to pay said R. D. Wheaton & Co. for the bridge mentioned in plaintiff's declaration," etc. This order is as follows:

"Jackson, Mich., January 25, 1894.
"Honorable Mayor and Common Council, Eaton Rapids, Mich.

"Gentlemen: When your bridge is erected and satisfactory, please pay R. D. Wheaton & Co. for same.
"Yours truly,
"The Canton Bridge Company,
"By John R. Reed, Secretary and Treasurer."

Defendant claims that this order was given on a settlement absolute and final between the parties as to the uncompleted work, including the Eaton Rapids bridge. At the time this order was given, the iron for the bridge had just been shipped from Canton. On January 29th the plaintiff notified the defendant by wire not to pay Wheaton for the bridge, and on the same day wrote the defendant that the order of January 25th had been obtained by Wheaton under false pretenses, and that plaintiff's foreman had been instructed to go on and complete the bridge, and that Wheaton had no authority to collect any money upon such contract. Defendant thereafter took a bond of indemnity from Wheaton, and paid him in full for the bridge. The plaintiff claims that such settlement, made when the order of January 25th was given, was both conditional and fraudulent; that is, that such settlement was made as a partial one only, and was not to become operative unless Wheaton met Reed, the secretary and treasurer of the company, at Chicago, within a few days thereafter, and made a complete settlement of all the business done under the contract; and that such Jackson settle-

ment was fraudulently obtained upon the part of Wheaton, in this: That Wheaton assigned to the plaintiff the remaining one-half of the "Sycamore job," so called (the other half having been formerly assigned to plaintiff), as a part of the Jackson settlement, and that it was subsequently discovered that such half so assigned at Jackson had been previously assigned to John C. Darst.

The plaintiff called Mr. Reed, who testified substantially that the Jackson settlement was subject to the conditions set forth above, and was procured by the fraudulent means stated.   Defendant introduced testimony which tended to show that the settlement was final, and that no fraud induced it.   This issue was submitted to the jury as follows:

"It is not disputed that the defendant has paid the amount due upon this contract to R. D. Wheaton, taking his bond.  *  *  *  Was the payment to Wheaton  *  * * authorized, and had he the right to collect and receive this money?   This must depend upon what you may find the truth to be regarding the arrangement between the plaintiff and Mr. Wheaton at Jackson, on January 25, 1894.   There is no dispute but that the plaintiff, on January 25, 1894, gave Mr. Wheaton an order to collect pay for this bridge when completed; and you are instructed that this order was in legal effect an assignment to Mr. Wheaton of the right to collect and receive pay,  *  *  *  unless, on account of fraud or mistake, you shall find that the order was improperly given, or that, after it had been given, it had been properly rescinded by the plaintiff, under such circumstances that the plaintiff would have the right to rescind."

Under this charge, the jury found for the defendant.

On the trial, while Mr. Reed was on the stand as a witness for plaintiff, he testified that he met Mr. Wheaton in Chicago, after the order on the defendant to pay Wheaton for the bridge; that he had found out then that the pay for half of the Sycamore bridge had been assigned to Darst, but had not yet been paid.   He was asked on cross-examination if he had, when he came back from Sycamore, orders for the erection and payment of

five or six unfinished bridges. He stated that he had. He was then asked if he had offered them to Mr. Wheaton. This was objected to as immaterial, and objection overruled. He answered that he had not offered them back to Mr. Wheaton. The court, in its charge, stated to the jury that it was the duty of the plaintiff to rescind the order immediately upon the discovery of the fraud, if any, and to put Wheaton back in his original position, by returning to him the orders received from him; and "if you find that the settlement was made as claimed by Mr. Wheaton, and the Canton Bridge Company has appropriated to itself the orders given it by Wheaton, and has never accounted to him for them, then it could not rescind the order given in this case to Wheaton, and your verdict should be no cause of action." Exception is taken to this portion of the charge, and error is assigned thereon.

It is contended by plaintiff that it was Wheaton's duty, under the contract, to either collect and pay himself, or allow all the money for these bridges to be paid over to the plaintiff; and that, in giving these orders, he did no more than it was his duty to do, as agent of the plaintiff, in carrying out his contract. The defendant contends (and the real defendant in this controversy is Mr. Wheaton) that a full and fair agreement was made at Jackson that Wheaton was to have the moneys coming for the erection of the bridge at Eaton Rapids; that to obtain this agreement, and in consideration of its being made, he surrendered the Sycamore contract; that the plaintiff company also had in its possession several other orders for the collection of moneys due on other jobs; that all the jobs were taken in the name of R. D. Wheaton & Co., and the orders assigned to the plaintiff. While the original contract between the parties did not make them partners, yet Wheaton's agency was coupled with an interest in each separate contract, of which he could not be divested by the arbitrary action of the plaintiff. The contract makes each contract taken a separate and

distinct undertaking, in which each of the parties had an equal interest.   If the contract was made at Jackson as claimed by Mr. Wheaton,—that is, without condition and without fraud,—certainly the court was not in error in saying that it could not be rescinded by plaintiff without return of the orders which it held from Wheaton, and putting him back in the same position as before the Jackson contract was made.

Some other questions are raised as to the admission and rejection of evidence.   We find no error in them, and do not think them of sufficient importance to notice.   The main issue in the case was fairly tried and submitted to the jury.

The judgment must be affirmed.

The other Justices concurred.